UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEWEY L. WILLIAMS, | CASE NO. 3:10CV2354 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Dewey L. Williams, seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the decision of the Commissioner is reversed in part and the Commissioner is ordered to award benefits commencing on April 19, 2009 through October 5, 2010.

**I**.  **PROCEDURAL AND FACTUAL HISTORY**

On November 29, 2005, Plaintiff filed an application for DIB and SSI alleging disability beginning September 14, 2005.  ECF Dkt. #10-9 at 229-234.[1]  The SSA denied Plaintiff's applications initially and on reconsideration.  ECF Dkt. #10-5 at 131-134. Plaintiff filed a request for an administrative hearing,  ECF Dkt. #10-6 at 180, and on October 23, 2007, an Administrative Law Judge, Yvonne K. Stam ("ALJ Stam") conducted an administrative hearing *via* video conference where Plaintiff and Joseph L. Thompson, a vocational expert ("VE"), offered testimony. ECF Dkt. #10-4 at 107-129.  On September 17, 2008, ALJ Stam issued a Decision denying benefits.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

ECF Dkt. #10-5 at 138-150. Plaintiff filed a request for review, which the Appeals Council granted. *Id.* at 152-154.

The Appeals Council ordered the ALJ to obtain supplemental evidence from the VE to clarify the effect of the assessed limitation on the claimant's occupational base (Social Security Rulings 83-12 and 83-14). The Appeals Council further ordered that the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. Finally, the Appeals Council ordered the ALJ to resolve any conflicts between the occupational evidence provided by the VE and the information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

A second administrative hearing was held on August 26, 2009 *via* telephone conference by ALJ Marlene W. Heiser ("ALJ Heiser"), where Plaintiff and Charles H. McBee, a VE, offered testimony. ECF Dkt. #10-3 at 74-105. On September 21, 2009, ALJ Heiser issued a Decision denying benefits. ECF Dkt. #10-2 at 63-72. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 55-58.

On October 14, 2010, Plaintiff filed the instant suit seeking review of ALJ Heiser's decision. ECF Dkt. #1. On March 24, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #12. On June 6, 2011, Defendant filed a brief on the merits. ECF Dkt. #15. On July 27, 2011, a reply brief was filed. ECF Dkt. #17.

**II**. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

ALJ Heiser determined that Plaintiff suffered from intercostal neuralgia, depression, and chronic obstructive pulmonary disease, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #10-2 at 65. ALJ Heiser further found that Plaintiff met the insured status requirements through December 31, 2009. *Id.* ALJ Heiser next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id*. at 67.

ALJ Heiser ultimately found that Plaintiff had the residual functional capacity ("RFC") to

-2-

perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except the claimant must be allowed to sit or stand at will; he should not be exposed to cold, heat, wetness/humidity, or atmospheric pulmonary irritants like gas, dust, fumes, and the like.  Plaintiff's work should be limited to simple, routine, repetitive tasks involving short, simple instructions in an environment with few work place changes, no fast pace, and limited contact with others.  Although ALJ Heiser found that Plaintiff could not perform his past relevant work, she determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to benefits.

According to Plaintiff's reply brief, while the SSI and DIB applications in this case were pending, Plaintiff filed "new applications" on October 7, 2009, alleging an onset date of October 6, 2010.  ECF Dkt. #17 at 937.  Benefits were awarded to Plaintiff on April 7, 2011.  *Id.* Consequently, Plaintiff appeals ALJ Heiser's decision as it relates to the period between September 14, 2005 and October 6, 2010.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a).   Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*  The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made

       without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

Plaintiff advances three arguments in this appeal. Plaintiff contends that ALJ Heiser erred in concluding that Plaintiff's borderline intellectual functioning and certain other physical

-4-

impairments were not severe impairments at step two of the analysis. Plaintiff further contends that, although his individual impairments did not meet any of the listings, his combined impairments equal the listings at step three. Finally, Plaintiff asserts that ALJ Heiser erred in formulating his RFC. Plaintiff advances several sub-arguments based upon the formulation of his RFC. First, Plaintiff contends that, because ALJ Stam found that Plaintiff could only perform sedentary work, and the Appeals Council did not reverse that finding, ALJ Heiser was prohibited from concluding that Plaintiff could perform light work. In the alternative, he argues that there was not substantial evidence to support ALJ Heiser's conclusion that he was capable of performing light work. Second, Plaintiff contends that the results of a dexterity test demonstrate that he is incapable of performing both light and sedentary work. Third, Plaintiff asserts that ALJ Heiser erred in concluding that his educational level was limited, because he is illiterate. Plaintiff contends that his illiteracy coupled with his psychological impairments render him incapable of maintaining substantial gainful employment. In the alternative, Plaintiff reasons that, if he is limited to sedentary work, and he is illiterate, then he was disabled on his 45th birthday, April 19, 2009, according to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Finally, Plaintiff argues that ALJ Heiser erred in relying upon the VE's testimony regarding jobs including a sit/stand option, because the VE failed to demonstrate that a significant number of jobs exist based upon Plaintiff's RFC.

In his reply brief, Plaintiff concedes that ALJ Heiser's failure to identify his borderline intellectual functioning and several physical limitations as severe limitations at step two is harmless error. *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)(once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error). Likewise, Plaintiff concedes that his impairments in combination do not equal the listings. See ECF Dkt. #17 at 938 ("Because the listings analysis essentially involves considering the combination of [Plaintiff's] impairments and their affect [sic] upon his functioning, however, for the sake of judicial economy this issue will be discussed under step five of the sequential analysis.") Accordingly, the Court will address the sub-arguments regarding the

-5-

formulation of Plaintiff's RFC, as they are the only arguments advanced in the reply brief.

At the hearing, Plaintiff testified that he attended special education classes, and he thought that he completed ninth or tenth grade. ECF Dkt. #10-3 at 79. Plaintiff "bounc[ed] from school to school" and could not remember precisely the grade he had completed. He stated that he can read and write "a little bit but that's about it." *Id.* at 80. He cannot read and understand newspaper articles. He testified that he could not write a note indicating that he was going to the store, nor read a note that states the same. *Id.* at 104. When asked how he completed the paperwork for his SSI and DIB applications, he explained that his neighbors assist him with anything in written form.

Despite his difficulties with reading and writing, Plaintiff was gainfully employed most of his adult life. Plaintiff was a can filler at Campbell Soup for approximately eighteen years. *Id.* at 81-82. However, when the can filling process was computerized in February of 2004, Plaintiff lost his job due to his inability to understand the new process. *Id.* at 82.

After he was terminated from his job, Plaintiff struggled with alcohol abuse and suicidal thoughts, and was hospitalized in December of 2004 for detoxification and treatment for depression. ECF Dkt. #10-24 at 558. During inpatient treatment, Plaintiff stated that he felt like he was losing everything, after having lost his job and his wife, and being on the verge of losing his home. ECF Dkt. 10-24 at 558. He was prescribed Wellbutrin XL 100 mg and Buspar 15 mg twice a day. *Id.* Although Plaintiff claims to have suffered with depression throughout the relevant time period, he did not receive treatment again until January of 2007, when he began experiencing suicidal thoughts. He received mental health treatment intermittently through March of 2009.

In 2005, Plaintiff was diagnosed with moderate to severe asthma, probable Chronic Obstructive Pulmonary Disorder ("COPD") and acute bronchitis. ECF Dkt. 10-28 at 721. Although hospitalization was recommended, Plaintiff opted for outpatient treatment and was prescribed Prednisone for approximately two weeks then Levaquin 500 mg for ten days. *Id.*

Plaintiff found a job working as a fabricator in June of 2005, ECF Dkt. #10-10 at 277, however, shortly after finding that job, Plaintiff was severely injured in a motor vehicle accident on September 14, 2005. Plaintiff was life flighted to St. Vincent Mercy Medical Center, he was on a ventilator for approximately fourteen days, and was discharged to an extended care facility where

-6-

he stayed for approximately one month due to a tracheostomy placement. ECF Dkt. 10-18 at 363-364; 10-21 at 483.

Plaintiff's health worsened while recovering from the accident. On October 25, 2005, he went to an emergency room with complaints of severe pain and a productive cough. Chest x-rays revealed a sixth left rib fracture and infiltrate in the chest with multiple subacute rib fractures with "significant displacement" among the fractures. ECF Dkt. #10-20 at 455. He returned to the emergency room on November 8, 2005, where he was given medication for neuropathic pain caused by injury to his intercostal[2] nerves. *Id.* at 451. On December 1, 2005, Plaintiff was referred for pain management. Dr. Jay L. Smith, M.D. explained that despite intense inpatient treatment and rehabilitation, Plaintiff continued to suffer from persistent, severe left sided chest wall pain, which Plaintiff was treating with twelve Percocets per day to get adequate relief. ECF Dkt. #10-21 at 483. Dr. Smith prescribed Kadian 50 mg per day progressively increasing to 100 mg per day, in hopes of providing improved pain relief. Plaintiff sought ongoing treatment for severe pain throughout the relevant time period.

Plaintiff was diagnosed with COPD in February of 2006. ECF Dkt. #10-21 at 500-501. A pulmonary function test revealed airway obstruction, however, Plaintiff was diagnosed with moderate obstructive ventilatory impairment. *Id.* At 501. An x-ray performed on February 26, 2006 revealed no acute pulmonary pathology. ECF Dkt. #10-22 at 524. James Byatt, M.D. prescribed Advair, an albuterol inhaler, Morphine, Kadian, Amytryptyilline, Naprosyn, Flexeril and Nexium. ECF Dkt. #10-22 at 515. On February 17, 2006, Plaintiff saw Dr. Byatt for insomnia, arthritis, right hip pain, neck pain and problems in his wrists and the small joints of his hand. *Id.* at 519. Dr. Byatt diagnosed crepitus in the cervical spine, and osteoarthritis in Plaintiff's wrists and hands. *Id.* In April of 2006, Dr. Byatt referred Plaintiff to Dr. Samuel Durham to have ribs removed. *Id.* at 517. Plaintiff saw Dr. Durham, but it was ultimately determined that surgery would not alleviate his pain. *Id.* at 531.

Throughout the relevant time period, Plaintiff suffered ongoing problems with his COPD.

---

[2]The term "intercostal" describes the muscles, parts, or intervals between the ribs.

-7-

Although it was well controlled on some doctor visits, ECF Dkt. #10-28 at 74, 727, he occasionally suffered serious problems, including shortness of breath so severe that he had to be hospitalized for intravenous treatment in August of 2006, *Id.* at 723, and a fractured a rib in February of 2009, which was attributed to coughing due to COPD. ECF Dkt. #10-31 at 821. Plaintiff continued to smoke cigarettes despite his pulmonary problems.  ECF Dkt. #10-32 at 835.

   Turning to the arguments advanced in this appeal, Plaintiff contends that the ALJ erred in concluding that he is capable of performing light work for two reasons.  Plaintiff's first argument is procedural.  Plaintiff contends that, because ALJ Stam found that he was limited to sedentary work, and the Appeals Council did not reverse that finding, ALJ Heiser was prohibited from concluding that Plaintiff was capable of performing light work.  Plaintiff cites no authority for this proposition, although his argument appears to be rooted in the rule of law announced in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir.1997).  In that case, the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Id.* at  839.  In *Drummond*, the Court held that where the first ALJ to review a claim for benefits by the plaintiff had determined that her residual functioning capacity was for "sedentary" work, a second ALJ's subsequent finding that she could perform "medium" work was precluded.  The *Drummond* Court rejected the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence.  *Id.* at 842.

   Here, Plaintiff argues that "[i]n finding [Plaintiff] to have the greater light capacity, [ALJ Heiser] did not find any improvement in his condition."  ECF Dkt. #12 at 905. However, the ALJ's decision in *Drummond* was a final decision.  *Drummond* is inapplicable here, as it is axiomatic that a decision vacated by the Appeals Council has no *res judicata* effect.  Furthermore, the Appeal Council in this case remanded the matter for the specific purpose of obtaining supplemental evidence from a VE to clarify the effect of the assessed limitation on the claimant's occupational base (Social Security Rulings 83-12 and 83-14).  Accordingly, Plaintiff's procedural argument is not well-taken.

   Next Plaintiff contends that there is not substantial evidence in the record to support ALJ

-8-

Heiser's conclusion that he is capable of performing light work. The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a). If someone can do light work, the Regulations instruct that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

At the hearing, Plaintiff testified that he could lift or carry twenty pounds. The actual exchange at the hearing is, as follows: "Q: How much do you think you could lift or carry?" "A: Very little. I'd say nothing over twenty pounds." Plaintiff correctly contends that, to the extent that ALJ Heiser relied upon Plaintiff's statement at the hearing, the testimony simply shows that Plaintiff was capable of lifting twenty pounds, not that he could lift twenty pounds with any regularity during the course of a workday.

Plaintiff further contends that ALJ Heiser misinterpreted other evidence in the rcord as well. In her Decision, ALJ Heiser observed that, "[t]he occupational therapist who examined [Plaintiff] in October 2006 noted that he was capable of sedentary work, but this opinion is negated by the notes reflecting that the claimant could lift 20 pounds occasionally." ECF Dkt. #10-2 at 70. A functional capacity evaluation ("FCE") was completed on October 31, 2006 by Beth Gericke, an occupational therapist and Lynne Prigge, a physical therapist, at the Fulton County Health Center. In the FCE, Gericke and Prigge concluded that Plaintiff is capable of sedentary work, defined as "[e]xerting up to 10# force occasionally and/or negligible amount of force frequently to lift, push carry, pull or otherwise move objects, including human body." ECF Dkt.#10-27 at 697.

However, during the test, Plaintiff was able to carry bilaterally twenty pounds occasionally, twelve pounds frequently, and eight pounds constantly. *Id.* at 696. Gericke and Prigge did note that "[d]uring tasks completed after the pushing and pulling it was noted that patient did exhibit a mild shortness of breath  After resting for approximately 1-minute the shortness of breath did resolve." *Id.* Consequently, although the test results establish Plaintiff ability to occasionally carry twenty

-9-

pounds, Gericke and Prigge nonetheless limited Plaintiff to sedentary work.

ALJ Heiser was obviously referring to the test results when she wrote that "[Gericke and Prigge's] opinion is negated by the notes reflecting that the claimant could lift 20 pounds occasionally."[3] However, Plaintiff correctly argues that ALJ Heiser's conclusion ignores the medical evidence to the extent that, despite Plaintiff's ability to carry twenty pounds occasionally, Gericke and Prigge found that Plaintiff is limited to sedentary work. Gericke and Prigge were apparently concerned that carrying twenty pounds exacerbated Plaintiff's respiratory problems.

As noted by the Sixth Circuit, the so-called cherry picking of evidence by the ALJ "can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir.2009). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001) (citation omitted). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* at 773 (citations omitted). However, in this case ALJ Heiser credited raw data and ignored the analysis of that data, thereby distorting the evidence in the record. Consequently, ALJ Heiser's conclusion that Plaintiff is capable of light work is not supported by the record, and the undersigned finds that Plaintiff is capable of only sedentary work with additional limitations.

In his second argument, Plaintiff asserts that ALJ Heiser erred in omitting a dexterity limitation in his RFC based upon the results of his Purdue Peg Test, which was administered during the 2006 FCE. Although the test is usually given only once, Plaintiff asked to try again, feeling his scores would improve. Despite three trials, Plaintiff scored very low with his right hand, achieving only 4%. ECF Dkt.#10-27 at 694-695. The test assesses fine eye hand coordination in relation to job factors. *Id.* at 965. When asked about Plaintiff's performance on this test, the VE testified that based on a score of a fourth percentile an individual would "have difficulty" doing the jobs identified, i.e. inspector hand packager, production assembler and bagger of garments. ECF Dkt.

---

[3]In his brief, Plaintiff contends that his ability to carry is limited to ten pounds occasionally, six pounds frequently, and four pounds regularly. However, those numbers refer to his ability to carry with his left upper extremities.

#10-3 at 96-97. However, ALJ Heiser discounted the results of the test, calling it "an incidental finding of questionable significance," ECF Dkt. #10-2 at 71, because the record as a whole did not support the conclusion that Plaintiff had dexterity problems. ALJ Heiser correctly observed that the record does not contain any ongoing problem with dexterity, and, furthermore, the VE testified that, although the hypothetical claimant with chronic dexterity problems would have difficulty performing the jobs he identified, that the additional limitation would not erode the occupational base. ALJ Heiser's conclusion is supported by the record in this case, and, therefore, she did not err in not including a limitation based upon dexterity in Plaintiff's RFC.

In his third argument, Plaintiff contends that ALJ Heiser erred in concluding that his intelligence is limited. "Limited education" means "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. 4040.1564(b)(3). A seventh grade through the eleventh grade level of formal education is considered a limited education. *Id.* Plaintiff asserts that he is illiterate, and that his illiteracy combined with his mental limitations renders him unable to work.

The regulations define illiteracy as the "inability to read or write." 20 C.F.R. 404.1564(b)(1). The regulations further provide that "[w]e consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id.* However, "[a] numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist." *Skinner v. Sec'y of HHS*, 902 F.2d 447, 450 (6th Cir.1990).

In *Skinner*, the plaintiff testified he only completed three grades and scored below a third grade reading level on the wide range achievement test ("WRAT"). *Id.* at 448. Despite this evidence, the ALJ determined the plaintiff had received a marginal education because he indicated on his disability application he had completed the eighth grade. *Id.* at 450–51.

Plaintiff is correct that *Skinner* stands for the proposition that a person who reads below a third grade reading level is deemed "functionally illiterate." *Id.* at 450. Here, in addition to Plaintiff's testimony that he cannot read or write even the most rudimentary message, the record

-11-

contains a functional capacity assessment completed by J. Bruce Kelly, M.Ed. on June 7, 2006. ECF Dkt. #10-22 at 533-539. According to Kelly, Plaintiff received a raw score of 22 on the WRAT III. *Id.* at 538. The test reflected that Plaintiff read at a first grade level. *Id.* Kelly also administered a Mini-Mental State Examination. The test revealed a lack of adequate writing and cognitive skills that were significantly below average. *Id.* at 536.

ALJ Heiser's failure to consider Plaintiff's claim that he is illiterate appears to have been predicated upon Plaintiff's testimony that he "thought" that he completed the ninth grade or tenth grade. However, ALJ Heiser's reliance on that testimony was misplaced, based upon the remaining evidence in the record. See *Skinner, supra.* Accordingly, the undersigned finds that the ALJ erred in concluding that Plaintiff had a limited education, and that Plaintiff is illiterate, as that term is defined by the Regulations.

Next, Plaintiff argues that his illiteracy, coupled with his mental problems, should have been factored into his RFC. Of course, ALJ Heiser considered Plaintiff's depression and fashioned his RFC to reflect to ability to perform only simple, routine, repetitive tasks involving short, simple instructions in an environment with few work place changes, no fast pace, and limited contact with others. Plaintiff's argument is raised without any additional analysis in his reply brief. Plaintiff contends that ALJ Heiser misinterpreted medical evidence in the record, and he cites his Global Assessment of Functioning ("GAF")[4] score of 30 on January 17, 2007. In fact, the record reflects that Plaintiff's GAF score on that date was 40. ECF Dkt. #10-25 at 603. Notably, the GAF score is taken from medical notes when Plaintiff was being discharged from the hospital after being admitted for suicidal ideation. However, Plaintiff received ongoing mental health treatment after he was discharged from the hospital, and his treatment records consistently reflected only moderate

---

[4]The GAF is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, *e.g.*, how well or adaptively one is meeting various problems-in-living. A score of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).

symptoms.  ECF Dkt. #10-22 at 538; 10-31 at 805-820.  Accordingly, Plaintiff has failed to demonstrate that the limitations factored into his RFC do not accurately reflect the limitations created by his depression.

In the alternative, Plaintiff contends that, because he is only capable of sedentary work and he is illiterate, benefits should have been awarded as of his 45th birthday.  20 C.F.R. Part 404, Subpart P, App. 2, Table 1, captioned "Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a result of Severe Medically Determinable Impairment(s)," Rule 201.17 directs a finding of disability at step five of the sequential analysis for an illiterate person who is age 45 to 49, and whose previous employment was unskilled.  Because the undersigned has concluded that Plaintiff is limited to sedentary work, he is illiterate, and his 45th birthday was on April 19, 2009, he satisfies the requirements of this provision as of that date.

In his final argument, Plaintiff contends that ALJ Heiser erred in concluding that a significant number of jobs exist for Plaintiff, because the VE admitted that he did not know the effect of the sit/stand option on the total number of jobs available to a hypothetical claimant with Plaintiff's RFC. When the VE was asked, "Do you have any studies or any information to suggest how many employers would allow [the sit/stand option] completely at the employees [sic] will?"  The VE responded, "No, I do not."  Although the number of representative occupations identified by the VE at the hearing were reduced to reflect restrictions from pulmonary irritants, no reduction was made based upon the sit/stand option.

The Commissioner argues that the VE's testimony is not at odds with the DOT.  The Commissioner misunderstands Plaintiff's argument.  Plaintiff does not contend that there is a conflict with the DOT, but that the VE's testimony calls into question whether the Commissioner met his burden of proof that a significant number of jobs exists based upon Plaintiff's RFC.

ALJ Heiser posed two hypotheticals to the VE, one involving light work and the other involving sedentary work.  The VE's testimony that he did not know the effect of the stand/sit option related to the jobs he identified with respect to the light work hypothetical.  He did not concede that any such "employer option" limitation would exist with respect to the jobs he identified in response to the sedentary work hypothetical.  Because the undersigned finds that Plaintiff is only capable of

sedentary work, based upon the record in this case, the VE's testimony with respect to the jobs identified in response to the light work hypothetical is irrelevant.

## **VI.** **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is REVERSED IN PART and the Commissioner is ORDERED to award benefits to Plaintiff commencing on April 19, 2009 through October 5, 2010.

DATE: March 14, 2012

                                         */s/George J. Limbert*
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE